**CITIZENS ACTION COALITION OF INDIANA, INC., et al., Appellants (Intervenors, Counsel for Intervenors and Statutory Party Below),**

v.

**PSI ENERGY, INC., Appellee (Respondent and Petitioner Below).**

No. 93A02–9409–EX–566.

Court of Appeals of Indiana.

May 3, 1996.

Michael A. Mullett, Indianapolis, John F. Wickes, Jr., Todd A. Richardson, Lewis & Kappes, Indianapolis, and Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellants.

Randolph L. Seger, Robert B. Scott, Thomas A. Jensen, McHale, Cook & Welch, P.C., Indianapolis, O. Wayne Davis, Robert L. Hartley, Jr., and B. Keith Shake, Henderson, Daily, Withrow & DeVoe, Indianapolis, for amicus curiae.

### OPINION

GARRARD, Judge.

This case marks the conclusion of more than a decade of litigation challenging the efforts of PSI Energy, Inc. (PSI) to recover, through electric rates, the costs of its ill-fated Marble Hill nuclear project. This appeal seeks review of the Indiana Utility Regulatory Commission's (hereinafter "commission") order awarding attorney fees and litigation expenses out of a common fund consisting of $150 million of customer refunds. Citizens Action Coalition of Indiana, Inc., et al. (collectively CAC) contends that the commission erred in refusing the parties' proposed supplemental settlement agreement regarding attorney fees and costs.

### FACTS

In 1984, PSI abandoned construction of its Marble Hill nuclear power generating station. PSI then attempted to recover its $2.7 billion investment through increased rates. In a similar case involving the canceled Bailly nuclear project, however, our supreme court held that a public utility could not recover through rates its investment in a canceled nuclear project that was never "used and useful" in serving the public. *Citizens Action Coalition of Indiana, Inc. v.*

*Northern Indiana Public Service Co.,* 485 N.E.2d 610, 614 (Ind.1985), *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687 (1986).

In the Marble Hill litigation, two later appeals held that PSI ratepayers were due refunds after PSI attempted to recoup the Marble Hill loss through certain "hidden charges." The first such instance occurred when the commission investigated the appropriate rate adjustments for Indiana utilities in light of the Tax Reform Act of 1986. Although the commission ordered a general reduction in utility rates, the order created an exception for PSI which allowed it to maintain its rates despite the tax decrease. Although this court initially affirmed the order, the Indiana Supreme Court reversed, finding the order permitted a hidden charge allowing PSI to recoup Marble Hill losses in contravention of its prior decision. *Citizens Action Coalition v. Public Service Co.,* 582 N.E.2d 330, 335 (Ind.1991), *reh'g. denied,* 595 N.E.2d 255 (1992). The supreme court held that to the extent that PSI ratepayers overpaid by virtue of this hidden charge, they were due a refund. *Id.* at 337.

The second refund due PSI ratepayers resulted from the commission's order in April 1990 terminating PSI's emergency rates but allowing an "incentive" rate of return. This court reversed the commission's order since it found the incentive rate to be another hidden charge to recover the Marble Hill loss. *Citizens Action Coalition v. Public Service Co.,* 612 N.E.2d 199, 202 (Ind.Ct.App. 1993), *trans. denied.*

After evidentiary hearings were conducted regarding the ordered refunds, PSI and the Office of the Utility Consumer Counselor (OUCC), the statutory representative for the public interest, presented a settlement agreement for the commission's approval. The agreement produced two common funds with a combined value of $150 million. The agreement also provided that PSI would pay an amount determined by the commission to be fair compensation for attorney fees, litigation expenses, and court costs. Moreover, the agreement stated that PSI would not participate in the supplemental proceedings regarding attorneys' fees and costs. On August 25, 1993, CAC filed its motion requesting attorneys' fees and litigation costs in the amount of 9.5% of the common fund created for refunds to ratepayers. Before entering an order regarding attorney fees, the commission approved the settlement agreement and allowed the parties an opportunity to present more evidence regarding the hours expended and the reasonable rate for such legal work.

On April 26, 1994, the OUCC and CAC submitted a supplemental settlement agreement on attorneys' fees and costs to the commission for its approval. This supplemental agreement provided for an award of 9.5% of the common fund ($14.25 million) with the provision that $3 million of the award be used to establish a trust to fund future ratepayer representation. The commission performed its own calculation of attorneys' fees utilizing the "lodestar-multiplier" method [1] and found $3.1 million to be a reasonable award. The commission then determined that the supplemental settlement agreement for $14.25 million was so far afield as to be unreasonable. Thus, the commission rejected the supplemental agreement and ordered payment of attorney fees and costs of approximately $3.1 million. CAC contends that the commission exceeded its authority by rejecting a reasonable settlement agreement and by entering an order that is contrary to law.

### *ISSUES*

I. Whether the commission erred in rejecting the supplemental settlement agreement regarding attorney fees and in ordering an award of $3.1 million out of a common fund consisting of $150 million of customer refunds.

---

**1.** Under the lodestar-multiplier method, a court first calculates the "lodestar" by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 427, n. 3 (Ind.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). The court then may enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *In re Washington Public Power Supply Sys. Lit.,* 19 F.3d 1291, 1294, n. 2 (9th Cir.1994), *aff'd in part,* 19 F.3d 1306 (1994).

A. Lodestar–Multiplier Method v. Percentage Method.

B. Attorney Fees and Related Proceedings.

## DISCUSSION & DECISION

### I.

■■■ CAC correctly asserts that the Commission had authority to order an award of attorney fees to be paid out of the refunds due ratepayers. Although the general rule in Indiana is that all parties to a lawsuit are obligated to pay their own attorney fees, Indiana courts have carved out an exception for "common fund" situations. *City of Hammond v. Darlington*, 241 Ind. 536, 162 N.E.2d 619, 622 (1959) *reh'g denied*, (establishing common fund exception to rule that parties pay their own attorney fees); *Greensburg Local No. 761 Printing Specialties v. Robbins*, 549 N.E.2d 79, 80 (Ind.Ct.App. 1990), *reh'g denied*, *trans. denied*; *City of East Chicago, Ind. v. Broomes*, 468 N.E.2d 231, 234 (Ind.Ct.App.1984), *reh'g denied*, *trans. denied.*[2] The award of attorney fees is paid from a common fund on the theory that those who benefit from the creation of the fund or from the creation of any other legal benefit should share in the expense of producing the benefit. *Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.*, 548 N.E.2d 153, 161 (Ind.1989). The rationale is an equitable one, designed to prevent "free riders" from taking advantage of the fund without paying their fair share. *Id.* The common fund exception is not limited to cases involving class actions or to cases before trial courts. Our supreme court specifically held that the commission had authority to order that attorney fees be paid out of a refund due ratepayers after an electric utility attempted to recover sunk costs for the abandoned Bailly nuclear plant. *Id.* at 162. Thus, we decline *amicus curiae* Indiana Electric Assoc.'s, et al. invitation to revisit the issue of whether the commission has authority to award attorney fees

so recently after our supreme court rendered its decision.

CAC argues that even though the commission had authority to award attorney fees, the commission exceeded its authority by rejecting the supplemental settlement agreement reached by CAC and OUCC. CAC contends that the commission deserted its role as an impartial fact-finder and, while purporting to protect the interests of the ratepayers, rejected an agreement which had been accepted by the statutory representative of the rate paying public. CAC relies upon I.C. § 8–1–1–5 (West Supp.1995), which states in pertinent part:

(a) The commission shall in all controversial proceedings heard by it be an impartial fact-finding body and shall make its orders in such cases upon the facts impartially found by it. The commission shall in no such proceeding, during the hearing, act in the role either of a proponent or opponent on any issue to be decided by it. . . .

. . . .

(c) If in any such proceeding the public interest is not otherwise adequately represented by counsel, in the opinion of the commission, it shall be the duty of the utility consumer counselor, if requested by the commission, to make adequate preparation for the presentation of the interests of the public in such proceeding and he shall at the hearing represent the public interests therein involved.

Essentially, CAC's position is that the commission acts merely in a ministerial manner and must accord a settlement reached by the CAC and the OUCC a strong presumption of approval. Although we recognize the strong public policy favoring settlement agreements, we reject the notion that the commission must accept an agreement endorsed by the OUCC without determining whether the public interest will be served by the agreement.[3]

---

**2.** Indiana courts have carved out two other exceptions as well. In the "obdurate behavior" situation, courts use their equitable powers to impose costs on defendants who behaved in bad faith. In the "private attorney general" situation, courts compensate a private party who brought suit to effectuate a strong legislative

policy. *Greensburg Local No. 761 v. Robbins*, 549 N.E.2d at 80.

**3.** I.C. § 8–1–1–5(d) further provides that:

[N]othing in this section prevents the commission from instituting, prosecuting, hearing or

We note at the outset that "settlement" carries a different connotation in administrative law and practice from the meaning usually ascribed to settlement of civil actions in a court. *See Pennsylvania Gas & Water Co. v. Federal Power Com'n*, 463 F.2d 1242, 1246 (D.C.Cir.1972). While trial courts perform a more passive role and allow the litigants to play out the contest, regulatory agencies are charged with a duty to move on their own initiative where and when they deem appropriate. *Id.* Any agreement that must be filed and approved by an agency loses its status as a strictly private contract and takes on a public interest gloss. *Cajun Elec. Power Coop., Inc. v. F.E.R.C.*, 924 F.2d 1132, 1135 (D.C.Cir.1991). Indeed, an agency may not accept a settlement merely because the private parties are satisfied; rather, an agency must consider whether the public interest will be served by accepting the settlement. C. Koch, *Administrative Law and Practice* § 5.81 (Supp.1995).

When awarding attorney fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Federal court have applied this reasonableness standard to common fund cases. *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993). Indeed, federal courts must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of a class and of protecting the interests of the class members in the fund. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir.1994) (requiring balancing of these competing interests in determining what

multiplier to use to adequately compensate counsel for contingency when using lodestar method). We find guidance from these federal decisions and conclude that the commission must examine a settlement agreement for attorneys' fees in common fund cases to determine whether the fee agreement is reasonable under the circumstances of the case. Thus, we reject the notion that an agency is absolved from considering the public interest in making an award of attorney fees when a statutory representative is provided to represent the public interest. The commission still must review the agreement under a reasonableness standard.

In analyzing whether the supplemental settlement agreement in this case was reasonable, the commission applied the lodestar-multiplier method to determine a reasonable attorney fee.[4] After concluding that an award of $3.1 million would be reasonable, the commission found the agreed award of $14.25 million so far afield as to be unreasonable. Our review of the commissions' findings and CAC's arguments reveals two basic disagreements between these parties; (1) the method to be used in determining attorney's fees, and (2) whether attorney fees should be awarded for proceedings related to the appeals which resulted in the common fund at issue. We now address these issues.

### A. Lodestar Multiplier v. Percentage of the Fund.

CAC contends that the commission lacked authority to calculate reasonable attorney fees using the lodestar method since its expert witnesses showed that the clear weight of authority throughout the nation strongly favors percentage awards in common fund cases over a lodestar computation. CAC

---

determining any investigation or proceeding which it is authorized to do, or make, on its own motion by any law with the administration of which it is charged.

Thus, the commission is authorized to determine attorney fees; indeed, the parties' original agreement explicitly granted the commission authority to determine fair compensation for attorneys' fees and costs. Simply because the commission used the lodestar method rather than the percentage method does not mean the commission failed to act impartially at the hearing.

4. In calculating attorney fees in common fund cases, courts have found an advantage to using the alternative method to double check the fee. For instance, a court can use the lodestar method to confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate; similarly, the percentage method can be used to assure that counsel's fee does not dwarf class recovery. *In re Chambers Development Securities Litigation*, 912 F.Supp. 852, 859 (W.D.Pa.1995); *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 820 (3d Cir. 1995).

provides this court with citations to numerous federal cases which calculate reasonable attorney fees in common fund cases by the percentage method.

▮▮▮ The commission's order is subject to our review pursuant to I.C. § 8–1–3–1 (West Supp.1995). In pertinent part, this section states that:

An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered.

Under a multiple-tier level of review, this court determines (1) whether the commission included specific findings on all factual determinations material to the ultimate conclusions, (2) whether substantial evidence supports the commission's findings of fact, and (3) whether the decision, ruling or order is contrary to law. An order is contrary to law if the commission exceeded its jurisdiction and failed to conform to the statutory standards and legal principles involved in producing its decision. *Citizens Action v. Northern Indiana Public Service Co.*, 485 N.E.2d at 612–13; *Gary–Hobart Water v. Utility Reg. Com'n.*, 591 N.E.2d 649, 652 (Ind.Ct.App. 1992), *reh'g denied.* The party who asserts the invalidity of an agency action bears the burden to demonstrate the invalidity. *Indiana Alcoholic Beverage Commission v. Edwards,* 659 N.E.2d 631, 632 (Ind.Ct.App. 1995); *AFL–CIO, Etc. v. Southern Ind. Gas & Elec. Co.,* 443 N.E.2d 1243, 1247 (Ind.Ct. App.1983).

▮▮▮ Initially, we note that the choice between using the percentage of the fund method or the lodestar method in calculating an attorney fee award has traditionally been committed to the trial court's sound discretion. *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 566 (7th Cir.1994); *In re Washington Public Power Supply Sys. Lit.,* 19 F.3d 1291, 1296 (9th Cir.1994); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C.Cir.1993). Indiana courts have not mandated any particular method of calculating attorney fees in common fund cases.

When our supreme court held that the commission had authority to award attorney fees out of a refund due ratepayers, it did not require calculation of the award by a particular method. *See Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.,* 548 N.E.2d 153 (attorneys requested fees of $77,000 out of common fund of over $50 million.) Moreover, our research has failed to reveal any Indiana decisions disparaging the lodestar method. Instead, we find that this court previously found no abuse of discretion when a trial court awarded attorney fees based upon the lodestar-multiplier method. *City of East Chicago, Ind. v. Broomes,* 468 N.E.2d 231, 235 (Ind. Ct.App.1984), *reh'g denied, trans. denied;* (without expressly approving the lodestar formula, this court stated that the trial court considered the requisite factors in determining attorney fees). Additionally, Indiana courts appear to favor flexibility and allow trial courts considerable discretion in calculating attorney fee awards out of common funds. Indeed, in *Arnold v. Dirrim,* 398 N.E.2d 426, 441 (Ind.Ct.App.1979), evidence was presented supporting attorney fee calculations both by the lodestar method (approximately $59,000) and by the percentage method ($164,000). This court refused to substitute its judgment for that of the trial court and affirmed the trial court's award of approximately $112,000 in attorney fees. *Id.* Thus, we conclude that no precedent mandates use of the percentage method or the lodestar method in calculating attorney fees for common fund cases in Indiana.

Should Indiana adopt one approach for calculating attorney fee awards in common fund cases? CAC encourages us to endorse the percentage method and directs our attention to federal case law specifically approving this approach. In particular, CAC directs our attention to *Blum v. Stenson,* in which the Supreme Court noted that, unlike the situation in fee-shifting cases, attorneys' fees in common fund cases are based on a percentage of the fund bestowed on the class. 465 U.S. 886, 900, n. 16, 104 S.Ct. 1541, 1549, n. 16, 79 L.Ed.2d 891 (1984). Moreover, several circuits now require use of the percentage method in common fund cases. In a

class action involving a common fund of $3 million, the Eleventh Circuit Court of Appeals vacated an award based upon the lodestar method and remanded with instructions for the district court to determine a reasonable attorneys' fee based upon a percentage of the common fund. *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 775 (11th Cir.1991). The court there stated:

> [W]e believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards.

*Id.* at 774. The D.C. Circuit has joined the Eleventh Circuit in concluding that a percentage of the fund method is the appropriate mechanism for determining the attorney fee award in common fund cases. *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993) (affirming award based upon percentage of fund.) Additionally, the Tenth Circuit has recognized the propriety of awarding attorneys' fees in common fund cases on a percentage of the fund basis rather than using a lodestar analysis. *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 456 (10th Cir.1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (holding that award of attorneys' fees based upon percentage of fund is not *per se* an abuse of discretion.)

■ Although several federal circuits have explicitly adopted the percentage method for computing attorney fees in common fund cases, other circuits leave the choice between methods to the discretion of the trial court. *See Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560; *In re Washington Public Power Supply Sys. Lit.,* 19 F.3d 1291 (9th Cir.1994); *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513 (6th Cir. 1993); *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 526 n. 10 (1st Cir. 1991). In particular, we observe that the Seventh Circuit recently declined to compel use of the percentage method to award attorneys' fees in all common fund cases. *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d at 565. While recognizing that the lodestar approach has its problems, the court there stated that it was not so flawed that it should be abandoned. *Id.* at 566. Specifically, the court found the following advantages to the lodestar method: (1) it provides greater accountability by requiring an explicit accounting of hours and rates, (2) the separation of multiplier and lodestar provides a means of accounting both for the hours and reasonable rate, and for the risk assumed in undertaking the case, and (3) it encourages attorneys to assess the marginal value of continuing to work on a case. *Id.* at 565. The Seventh Circuit concluded by stating that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court. *Id.* at 566; *see also Harman v. Lyphomed, Inc.,* 945 F.2d 969 (7th Cir.1991) (finding no abuse of discretion by district judge who rejected percentage approach for calculating attorney fees in common fund case and instead used lodestar approach). We find the Seventh Circuit's recent decision well-reasoned and persuasive, and we decline CAC's invitation to mandate use of the percentage method to calculate attorney fees in common fund cases in Indiana. The commission has discretion to use either the lodestar method or the percentage method, and the parties may not limit this discretion by the evidence they present.

**B. Related Proceedings.**

The Marble Hill cost-recovery litigation spanned more than ten years and involved six proceedings before the commission and four separate appeals. Two of these appeals resulted in creation of the common fund at issue here which contains $150 million of customer refunds. When the commission calculated the attorney fees due CAC out of the common fund, it concluded that CAC was entitled to "reasonable compensation and reimbursement of expenditures for the two appeals in which they have prevailed, and the Commission causes which gave rise to these appeals, and not any other PSI litigation

undertaken by them." Record at 2092. The commission's order contained the following relevant passage:

> It would appear intuitively obvious that if a party prevails in a case, and as a result thereof is entitled to recover the fees and costs of that litigation, that those fees and costs should be limited to the successfully concluded litigation.... The related proceedings for which Movants contend they are entitled to fees are not separate issues of some "mega-cause," but they are indeed separate legal proceedings which were won or lost on the merits of the issues.

Record at 2090. Accordingly, the commission denied CAC's request for attorney fees and costs for the admittedly related proceedings which did not contribute directly to creation of the common fund.

CAC contends that the commission erred when it limited the attorney fee award to those proceedings which contributed directly to creation of the common fund. Essentially, CAC argues that it provided valuable services through all of the Marble Hill cost-recovery litigation, that ratepayers benefitted substantially from its efforts, and that the commission greatly undercompensated CAC for its services. We find CAC's argument persuasive.

The United States Supreme Court has held that where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys' fees reduced merely because the court did not adopt every contention raised. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). In *Hensley*, respondents brought suit on behalf of all persons involuntarily confined in the forensic unit of a Missouri state hospital. The three-count complaint alleged: (1) unconstitutional treatment and conditions at the hospital (Count I), (2) placement of patients in the maximum-security building without procedural due process (Count II), and (3) lack of compensation for patients who performed institution-maintaining labor (Count III). *Id.* at 426, 103 S.Ct. at 1935. Respondents ultimately prevailed on Count I and requested attorney's fees pursuant to 42 U.S.C. § 1988. The district court refused to eliminate from

the award hours spent on the unsuccessful claims. *Id.* at 428, 103 S.Ct. at 1936. After reviewing the lower court's decision, the Supreme Court held that:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440, 103 S.Ct. at 1943. Although the commission correctly noted that *Hensley* dealt with related claims in a single lawsuit, we find the Supreme Court's analysis, with its emphasis on the extent of plaintiff's success and its concern for providing reasonable compensation to attorneys, useful in the present case. *See also Nydam v. Lennerton*, 948 F.2d 808 (1st Cir.1991) (awarding attorney fees for criminal defense of plaintiff and negligence action because these claims were related to the civil rights action and arose from the same common core of facts as the civil rights claim).

We find further guidance in *Bebchick v. Washington Metro. Area Transit*, 805 F.2d 396 (D.C.Cir.1986) (*"Bebchick III"*). In the *Bebchick* litigation, plaintiffs succeeded in overturning two Washington Metropolitan Area Transit Commission rate orders and later reversing three sets of commission remand determinations. The litigation involving Transit included twelve separate proceedings which spanned approximately twenty-two years. *Id.* at 401. In a prior proceeding, the D.C. Circuit remanded to the commission the task of determining attorney fees for the Bebchick group. *Id.* at 398. The commission then requested clarification as to which proceedings it should

award attorney fees. In *Bebchick III*, the D.C. Circuit rejected Transit's argument that the attorney fee question only covered proceedings directly related to the prior proceeding and awarded the requested fee of approximately 25% of the common fund. *Id.* at 401, 409.

We find the case at bar to resemble *Bebchick.* The various proceedings here all arose from the same core of facts; i.e., PSI's attempts to recover its Marble Hill investment through increased rates. CAC resisted PSI's efforts for more than a decade by conducting complicated litigation on a predominantly contingent fee basis. Although the commission admitted the relatedness of these proceedings, it declined to compensate CAC for the claims which were indirectly related to the creation of the common fund. We conclude that the commission failed to reasonably compensate CAC for the legal services it provided throughout this lengthy litigation. As such, the commission's finding that $3.1 million constituted a reasonable attorney fee award was not supported by substantial evidence and its order must be reversed.

CAC asks this court to approve its supplemental settlement on attorney fees and to grant the requested amount without remanding to the commission for another round of litigation. CAC asserts that its agreement on fees was reasonable and thus was incorrectly rejected by the commission. There is no consensus on how to determine a reasonable percentage for attorney fees in common fund cases. *In re Unisys Corp. Retiree Med. Bene. ERISA Lit.,* 886 F.Supp. 445, 460 (E.D.Pa.1995). While CAC states that a number of courts have recognized twenty-five percent as a "benchmark" for common fee awards, we note that courts generally decrease the percentage as the size of the fund increases. *Id.* at 462. Although twenty-five or thirty percent may be an appropriate award on a recovery of a million dollars, it is likely to result in a windfall where the recovery totals many millions of dollars. *Id.* (citation omitted).

The agreement submitted by CAC and the OUCC provided for attorney fees and costs of 9.5% of the $150 million common fund, or $14.25 million. The number of cases involving a common fund in the neighborhood of $150 million is relatively small. Research reveals that in cases where the fund is between $100 and $200 million, fees typically range from 4%–10%. *Id.* n. 33, citing *In re MGM Grand Hotel Fire Litigation,* 660 F.Supp. 522 (D.Nev.1987) ($205 million settlement fund; 7% fee award); *In re Baldwin–United Corp. Litigation,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) 92,-918, 1986 WL 12195 (S.D.N.Y.1986) ($183.8 million settlement fund; 4.1% fee award); *In re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1296 (E.D.N.Y.1985) ($180 million settlement fund; 5.5% fee award); *Sioux Nation of Indians v. United States,* 650 F.2d 244, 227 Ct.Cl. 404 (1981) ($106 million settlement fund; 10% fee award); *In re Folding Carton Antitrust Litigation,* 84 F.R.D. 245 (N.D.Ill.1979) ($200 million settlement fund; 6.6% fee award). *See also In re Unisys Corp. Retiree Med. Bene. ERISA Lit.,* 886 F.Supp. 445 (E.D.Pa.1995) ($111 million settlement fund; 6.25% fee award); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451 (10th Cir.1988) ($75 million settlement fund; 16.5% fee award).

While CAC's requested percentage is on the high end of this range, it does not appear to be outside the bounds of reasonableness. However, a determination on the reasonableness of an award must be based upon the facts of each particular case. Due to the voluminous record [5] here and the complicated interweaving of proceedings before the commission, we find it necessary to remand to the commission for recalculation of a reasonable attorney fee award. In so doing we recognize that a request for attorneys' fees should not result in a second major litigation and that, ideally, litigants will settle the amount of a fee. *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941. However, we also note that courts generally double check a fee award reached by the percentage method by comparing the result reached utilizing the lodestar method. Because the

---

**5.** Record consists of 21 volumes, with a total of 4360 pages.

commission has been intricately involved in each stage of the proceedings and can more accurately determine this amount, we remand this task to the commission. We instruct the commission to determine the hours reasonably expended by CAC on all phases of the Marble Hill litigation and to calculate a fee award using the lodestar method to check the accuracy of CAC's computation.

### CONCLUSION

We reverse the commission's order excluding an award of attorney fees to CAC on the related Marble Hill litigation and remand the task of determining whether the supplemental agreement provides a reasonable award.

If the agreed award constitutes a reasonable attorney fee award, the CAC is instructed to approve it in its entirety. Should the agreed award be found unreasonable, however, the commission is instructed to determine a reasonable award based upon the evidence in the record.

STATON and BARTEAU, JJ., concur.