Jennifer A. FLORIN and Alan L. Mundt, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NATIONSBANK OF GEORGIA, N.A., Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith Thomas F. Stutzman, Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon, and Frank E. Walsch, Jr. Defendants.

No. 91–C–948–S.

United States District Court, W.D. Wisconsin.

Nov. 2, 1994.

Kent I. Carnell, Lawton & Cates, Madison, WI, for Jennifer A. Florin.

Herbert E. Milstein, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Alan L. Mundt.

Robert H. Friebert, Friebert Finerty & St. John, S.C., Milwaukee, WI, for Wesray Capital Corp., Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon, Frank E. Walsh, Jr.

Brady C. Williamson, Lafollette & Sinykin, Madison, WI, for Nationsbank of Georgia, N.A. Citizens and Southern Corp.

David J. Cannon, Michael, Best & Friedrich, Milwaukee, WI, for Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, Thomas F. Stutzman.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Final approval of the settlement of this ERISA class action occurred on March 31, 1993. The approved Settlement Agreement released defendants from potential liability for statutory attorneys' fees but permitted plaintiffs' counsel to petition the Court for an award from the settlement fund. Accordingly, the Court also considered the application of plaintiffs' counsel for fees at the hearing on final approval and awarded the full amount of fees and expenses requested in the application, but declined to enhance the fees with a multiplier.

Plaintiffs' counsel appealed the denial of a multiplier. The 7th Circuit Court of Appeals

held "that a risk multiplier is not merely available in a common fund case but mandated, if the Court finds that counsel 'had no sure source of compensation for their services'" *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir.1994) (citations omitted). Since counsel could only recover fees from the proceeds of this action the Court of Appeals remanded the case for the limited purpose of determining an appropriate multiplier:

On remand, the district court must consider how much compensation class counsel should receive for incurring the risk of nonpayment when it took the suit. Because the district court has already computed and approved of counsel's lodestar, the court may, under the "lodestar method," need (sic) only determine what multiplier to use to adequately compensate counsel for contingency.

*Id.*

## MEMORANDUM

█ Initially, plaintiffs' counsel suggest that the Court apply the percentage-of-recovery rather than the lodestar method for computing an appropriate fee. While the Court has discretion to apply either method, *id.* at 566, it makes little sense to apply the percentage-of-recovery method where it has already determined the lodestar amount since its principle advantage, administrative ease in application, would not be realized. The Court finds that the lodestar method, which provides for greater accountability and a more careful check on excessive fees, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir.1991), is appropriate in this case.

█ Having determined that the lodestar method is more appropriate, the sole remaining task is to assess the appropriate multiplier to account for counsels' contingency risk. Contrary to counsels' assertion, the appellate decision expresses no opinion on the reasonableness of a requested 1.53 multiplier. The only specific guidance determined that the requested multiplier was not, as a matter of law, excessive under the previously suggested limit of double recovery. *Florin*, 34 F.3d at 565 (citing *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir.1988)). The

Court did, however, provide general guidance for determining an appropriate multiplier:

"The district court must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." A court must assess the riskiness of the litigation by measuring the probability of success of this type of case *at the outset* of the litigation.

34 F.3d at 565 (citations omitted).

This task is made more difficult by the non-adversarial nature of the proceeding since the class plaintiffs who will bear the burden of the extra fees are unrepresented. The fact that there is no specific opposition to the fee request, although there was some opposition to the settlement, does not diminish the Court's obligation to protect class members from excessive fees or counsels' obligation to establish the degree of risk they faced at the outset of the case. With these obligations in mind the Court considers the evidence and argument of risk presented by counsel. Counsels' evidence of risk remains substantially unchanged since final approval of the settlement. In fact, the renewed petition merely summarizes and references pages 6–11 of the Revised Joint Application of Plaintiffs' Counsel dated March 23, 1994. That document reveals the evidence to be inadequate to support a finding that plaintiffs' attorneys faced substantial risk at the outset of the case.

Counsel first notes the complexity of the case. Complexity, however, is ordinarily not a factor in determining an appropriate risk multiplier since it is considered in the lodestar computation. In fact, the lodestar rates here applied were the highest ever employed by this Court, including an average rate of more than $170 per hour, substantial time billed at individual rates of $250 per hour and above and over 850 hours billed at $350 per hour. Counsel was handsomely rewarded for dealing with the complexities of this case.

The central issue which affected the riskiness of the case as identified by counsel and their experts was the value of the stock purchased by the ESOP. Counsel character-

izes the valuation issues as "difficult and subjective." Counsel then summarizes the evidence that strengthened defendants' position: the trustee approved the sale, the bank financed the sale apparently reasoning that the debt could be serviced, and a similar mattress company sale "arguably indicated" that the sale price was fair. Counsel fails, however to summarize the evidence in plaintiffs' favor: Simmons' undisclosed poor cash flow position, wild predictions of future profitability and, most persuasive, post sale market value offers for the stock at less that one fourth the purchase price. While this evidence was certainly refined through discovery, there is nothing to indicate that the essential competing facts were unknown when the case was accepted.

Considered together, the evidence on valuation, known from the outset of the litigation, revealed that it posed minimal risk *to recovery by counsel of reasonable fees.* Certainly resolution of the valuation issue could greatly affect the outcome of the action, but the very nature of the dispute virtually assured sufficient recovery to pay reasonable fees of counsel. The difficult and subjective valuation issues to which counsel refers effectively insulated the case from summary judgment on the issue of valuation. Accordingly, the likelihood of settlement prior to trial at a sum sufficient to cover attorneys' fees was extremely high. In the event the case went to trial it is highly unlikely that the conflicting testimony on valuation would have yielded a recovery so small that counsel would not be paid.

In summary, there was risk involving the proof of the value of the stock at issue, but that risk affected principally the *amount* of recovery, not the fact that some recovery sufficient to pay counsel would be realized. The risk inherent in the valuation issue was reflected in the settlement, which was at an amount the Court found to be "within hailing distance of that which could be expected were the matter to have proceeded to trial."

The remaining three arguments advanced by counsel are unpersuasive or unsupported. First, counsel argues that the non-fiduciary defendants may ultimately have escaped liability and that "[t]he class would have been unlikely to collect a substantial recovery from only the Fiduciaries." There is absolutely no support for any part of this statement in the record. There is nothing to indicate what a "substantial recovery" might be and whether it would have been enough to pay attorneys' fees nor why full recovery from the fiduciaries could not be expected in the first place. Neither the financial situation of the fiduciaries nor any insurance or indemnification available to them is discussed. Such a bald and speculative statement does not establish entitlement to a risk multiplier.

Reference to the statute of limitations is even more confusing and less persuasive. Counsel notes this action was filed two months prior to the expiration of the statute of limitations. There is no suggestion that an argument could have been made that the statute had expired. All that can be gleaned from this argument is that counsel had two additional months to investigate the merits of the case before filing. They did not utilize that additional two months, apparently satisfied with the strength of their position. There is nothing to indicate that the statute of limitations added anything to the risk of the case.

The final assertion advanced by counsel, supported only by hearsay and without any affidavit in support, is that "Petitioners learned that other lawyers investigated the matter and determined not to pursue this action, presumably because of the highly risky nature of bringing the Action ..." Not only is the fundamental fact of refusal by other counsel unsupported, the reasons for any such refusal are nothing more than the rankest speculation.

This Court has the obligation to fairly compensate counsel and to protect the unrepresented class members from paying excessive fees at the insistence of their former attorneys. It takes both obligations very seriously. Counsel has clearly been fairly compensated by the lodestar award. Their arguments and evidence in support of a multiplier demonstrate an effort to exact excessive fees from their former clients under circumstances which fail to suggest any substantial risk faced by counsel for which they have not been paid. Since the nature of any class

action suit establishes some risk as a matter of law, and because none has been established here as a matter of fact, counsel are awarded a minimal multiplier of 1.01.

## ORDER

IT IS ORDERED THAT counsel is awarded a risk enhancement multiplier of 1.01.

IT IS FURTHER ORDERED THAT counsel receive an additional payment of $18,638.39 and that the balance of the fund be distributed to the class members.

Judgment reversed, 21 F.3d 799.