Jennifer A. FLORIN and Alan L. Mundt, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NATIONSBANK OF GEORGIA, N.A., Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, Thomas F. Stutzman, Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon, and Frank E. Walsh, Jr., Defendants.

Appeal of COHEN, MILSTEIN, HAUSFELD & TOLL; Lawton & Cates, S.C.; Robins, Kaplan, Miller & Ciresi; Schatz, Paquin, Lockridge, Grindal & Holstein; and Heins, Mills & Olson, P.L.C.

No. 94–3800.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1995.

Decided July 24, 1995.

Brady C. Williamson, Lafollette & Sinykin, Madison, WI, for Nationsbank of Georgia, N.A., Defendant and Citizens and Southern Corp.

Robert H. Friebert, Friebert, Finerty & St. John, Milwaukee, WI, for Wesray Capital Corp., Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon and Frank E. Walsh, Jr., Defendant.

David J. Cannon, Michael, Best & Friedrich, Milwaukee, WI, for Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, and Thomas F. Stutzman.

Bruce M. Davey, Kent I. Carnell, Lawton & Cates, Madison, WI, Lowell E. Sachnoff (argued), Gary S. Caplan, Sachnoff & Weaver, Chicago, IL, Herbert E. Milstein, Lisa M. Mezzetti, Cyrus B. Mehri, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Cohen, Milstein, Hausfeld & Toll, Lawton & Cates, S.C., Robins, Kaplan, Miller & Ciresi, Schatz, Paquin, Lockridge, Grindal & Holstein and Heins, Mills & Olson, P.L.C.

Before ESCHBACH, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

"A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct.

1933, 1941, 76 L.Ed.2d 40 (1983). Unfortunately, in this case, this dictate has already been transgressed. This is the second time that we have addressed the issue of attorneys' fees in this class action. It will also be the last. The facts of the underlying case and of the fees dispute are recounted in the first opinion of this court, *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir.1994) (*Florin I*), and will be repeated here only as necessary for the resolution of the appeal.

The underlying lawsuit involved a class of plaintiffs, participants in and beneficiaries of the Simmons Mattress Company's employee stock ownership plan ("ESOP"), who claimed that the defendants violated the Employee Retirement Income Security Act ("ERISA") by causing shares of Simmons stock to be sold to the ESOP at a price above the market value. The parties settled the suit and set up a common fund,[1] totaling approximately $15.5 million. The settlement provided that class counsel would seek their fees and expenses from the fund. Counsel for the class sought $2.85 million in fees, which represents 18.45% of the fund, or the lodestar of $1,863,-838.75 enhanced by a risk multiplier of 1.53. The district court, using a lodestar analysis,[2] awarded class counsel the lodestar amount as its fees, without using a risk multiplier. In *Florin I*, we remanded, holding "that a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for the services.'" *Florin I*, 34 F.3d at 565 (quoting *Matter of Continental Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir.1992)).

On remand, the district court concluded that "there was risk involving the proof of the value of the stock at issue, but that risk

affected principally the amount of recovery, not the fact that some recovery sufficient to pay counsel would be realized." Accordingly, the district court allowed the smallest possible multiplier of 1.01. Class counsel once again appealed.

■ We review the district court's award of attorneys' fees deferentially. *Matter of Continental Ill. Sec. Litig.*, 962 F.2d at 568. The same standard is used in reviewing the district court's risk multiplier determination. *In re Washington Public Power Supply Sys. Litig.*, 19 F.3d 1291, 1301 n. 11 (9th Cir.1994). Moreover, where, as here, the plaintiff class is unrepresented in the issue of attorneys' fees, the court must jealously guard the interests of the class. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir.1995). However, the court must also be careful to sustain the incentive for attorneys to continue to represent such clients on an "inescapably contingent" basis. *Matter of Continental Ill. Sec. Litig.*, 962 F.2d at 569; *see also Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir.1991).

■ In determining attorneys' fees in a common fund case, courts use a risk multiplier to compensate the attorneys for the risk that they will not be paid if the litigation is unsuccessful. The risk multiplier is an effort to mimic market forces. *See Matter of Continental Ill. Sec. Litig.*, 962 F.2d at 569. The district court, by allowing only a 1.01 risk multiplier, in essence found that the attorneys for the class faced no risk in taking on the case, that in the end, they were assured of a paycheck.[3] We disagree. The district court based its conclusion on its belief that "the likelihood of settlement prior to trial at a sum sufficient to cover attorneys' fees was extremely high." However, the district

---

1. The payment of attorneys' fees from a "common fund" in a class action is a judge-made exception to the "American Rule," under which each side pays its own attorneys' fees. For a brief historical background of the American Rule and its exceptions, see Charles R. Haywood, Comment, *The Power of Bankruptcy Courts to Shift Fees under the Equal Access to Justice Act*, 61 U.Chic.L.Rev. 985, 987–93 (1994).

2. This circuit has taken the position that, in awarding attorneys' fees, a district court may use

the lodestar method, the percentage of recovery method, or some combination of the two. *See, Florin I*, 34 F.3d at 565–66; *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir.1991).

3. A risk multiplier of 1.01 equates to a finding that the class counsel had better than a 99% chance of recovering its fees. The multiplier is determined by dividing 1 by the probability of success.

court's own findings run counter to this conclusion. During the March 31, 1993 hearing concerning the settlement, the court stated:

> the Court can state without equivocation that on its face plaintiffs could not have suggested to this Court that they indeed had a dead-bang winner at either the inception nor throughout the extended discovery which had taken place. The Court also understands the complexity of the matter as well as those substantial risks which were faced by the plaintiffs both as to liability and to damages.

We believe the district court was correct when it evaluated the risks faced by plaintiffs as "substantial." From the inception of the case, plaintiffs appeared to have an uphill fight. To begin with, very few areas of the law are as unsettled and complex as ESOP valuation. *See* Robert J. Gross, *ESOP Valuation Issues,* 3 J. of Employee Ownership L. & Fin. 53 (Winter 1991). Such uncertainty increases the risk an attorney faces. Plaintiffs claiming a breach of fiduciary duty do not often succeed. *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.,* 886 F.Supp. 445, 478–79 (D.Pa.1995).

Moreover, the defendants had a number of facially plausible defenses to the action. The sale had been condoned by the trustee to the ESOP who had hired an independent appraiser, Houlihan, Lokey, Howard & Zukin, Inc., to evaluate the purchase price. Both the trustee and Houlihan, Lokey determined that the sale price was at a fair market value. Additionally, Chemical Bank of New York City, the primary lender for the sale, hired its own independent financial expert, Valuation Research Corporation, to review the sale. After getting a favorable report from Valuation Research, Chemical Bank gave its imprimatur to the sale.

Another issue that was in doubt at the inception of the suit was whether the class had incurred any substantial injury. The defendants argued that any damages had been largely mitigated by post-sale contributions made by the sellers. If this were true, even if plaintiffs proved liability, the damages attained would not have supported the attorneys' fees.

Additionally, a number of the defendants with the deepest pockets were not fiduciaries to the class. When the plaintiffs filed this action, even though this circuit had held that non-fiduciaries could be held liable under ERISA, *Thornton v. Evans,* 692 F.2d 1064, 1078 (7th Cir.1982), other circuits had held the opposite, *see, e.g., Mertens v. Hewitt Assocs.,* 948 F.2d 607, 611 (9th Cir.1991), and it was not clear whether the defendants would be able to change venue to a jurisdiction with more favorable law on this issue.[4]

While not all of these issues may have been resolved in the defendants' favor, the uncertainty they posed created appreciable risk for class counsel of not receiving remuneration. Therefore, the district court erred in setting only a 1.01 risk multiplier.

As this is the second time that the issue of a risk multiplier has been before us, we believe that rather than waste both the district court's and the appellants' time, the appropriate risk multiplier can be resolved on appeal. The record is fully developed on what risks class counsel faced when it filed the action, and remand is not necessary. *See Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.,* 960 F.2d 564, 567 (5th Cir. 1992).

■ Class counsel requests a multiplier of 1.53, which translates to a 34.6% risk of not being paid—better than a one-in-three chance. Although, as we have noted in the past, an *ad hoc* determination of the risk that class counsel faced when it filed the action is subjective and somewhat artificial, *see Florin I,* 34 F.3d at 565; *Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir.1988), we believe the requested multiplier of 1.53 is reasonable. Appellants have identified a number of potential weak points in plaintiffs' case, any one of which, if resolved against plaintiffs, could have resulted in appellants having no source for their fees. The multiplier of 1.53 leads to attorneys' fees of $2.85 million, which corresponds to about 18.5% of the settlement fund—below that which courts

---

4. Subsequently, the Supreme Court decided the issue in favor of non-liability of non-fiduciaries.

*Mertens v. Hewitt Assocs.,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

typically award under the percentage approach in cases with common funds of similar size. *See In re Unisys Corp., supra,* at 463 (stating that "though the benchmark in common fund cases is 20%–30%, fee awards usually fall in the 13%–20% range for funds of $51–$75 million, and in the 6–10% range for funds of $75–$200 million").

We VACATE the district court's order of November 1, 1994, which established a risk multiplier and awarded additional attorneys' fees. We ORDER that the risk multiplier is hereby set at 1.53. This matter is REMANDED to the district court with direction to award additional attorneys' fees to appellants in the sum of $986,161.25 for a total attorneys' fee award in this case of $2,850,000.00.