17-2662-cv
*Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

(Argued: November 15, 2018                    Decided: May 23, 2019)

Docket No. 17-2662

_____

FRESNO COUNTY EMPLOYEES' RETIREMENT ASSOCIATION,

*Plaintiff-Appellee,*

v.

ISAACSON/WEAVER FAMILY TRUST,

*Objector-Appellant.*[1]

_____

Before: JACOBS, POOLER, and WESLEY, *Circuit Judges.*

The Isaacson/Weaver Family Trust appeals from the July 26, 2017, order of

the United States District Court for the Southern District of New York (Alison J.

_____

[1] The Clerk of Court is directed to amend the caption as above.

Nathan, *J.*) granting Bernstein Litowitz Berger & Grossmann LLP's request for a percentage fee awarded from the common settlement fund. The fee award was compensation for the firm's representation of a class of plaintiffs that settled federal securities law claims against BioScrip, Inc. The Isaacson/Weaver Family Trust, a member of the class, objected to the fee award in the district court, arguing that the class's claims were brought pursuant to statutes containing fee-shifting provisions and therefore class counsel's fee award was presumptively limited to the unenhanced lodestar (counsel's hourly rate multiplied by the hours expended on the case). The district court found this objection unavailing and ruled that, because the parties' settlement agreement provided for class counsel to be compensated from a common settlement fund, class counsel was entitled to fees under the equitable common-fund doctrine rather than pursuant to a statutory fee-shifting provision. Under the common-fund doctrine, the district court held that a percentage fee award was appropriate.

On appeal, we conclude that, regardless of whether the claims settled here were initiated under fee-shifting statutes, the common-fund doctrine properly controls the district court's allocation of attorneys' fees from a common

2

settlement fund. This is because class plaintiffs have received the benefit of counsel's representation and assumption of the risk that the lawsuit will not render a recovery, and thus the class may be fairly charged for counsel's assumption of contingent risk. The district court was therefore entitled to exercise its discretion to award either a percentage-of-the-fund fee or a lodestar fee to class counsel. We offer no opinion as to whether the claims settled here were initiated under fee-shifting statutes. Accordingly, we AFFIRM the order of the district court.

Affirmed.

_____

> ERIC ALAN ISAACSON, La Jolla, CA, *for Objector-Appellant*.
>
> HANNAH G. ROSS, Bernstein Litowitz Berger & Grossmann LLP (Jai Chandrasekhar, *on the brief*), New York, NY, *for Plaintiff-Appellee*.

POOLER, *Circuit Judge*:

The objection of the Isaacson/Weaver Family Trust (the "Objector") to Bernstein Litowitz Berger & Grossmann LLP's fee award raises a novel issue of the proper principles for allocating fees awarded from a common-fund

settlement. The Objector argues that, whenever an action is initiated under a statute with a fee-shifting provision, an attorney's fee is presumptively limited to the unenhanced lodestar fee, even if the action is settled by the creation of a common fund. Appellee argues that the contrary is true, claiming that, whenever an action is settled with the creation of a common fund, equitable principles permit the district court to award a fee that can be calculated using either the lodestar-fee method or a percentage-of-the-fund method. As Second Circuit case law has long implied, we hold that, even if a case is brought pursuant to a fee-shifting statute, common-fund principles control fee awards authorized from a common fund, and a common-fund fee award may be calculated as the lodestar or as a percentage of the common fund. In so holding, we recognize the acute difference between assessing a fee award against a defendant, who reaps no benefit from an action brought against him, and requiring class members to compensate counsel for representation that enriches the class. We AFFIRM the well-reasoned order of the district court finding that Bernstein Litowitz Berger & Grossmann LLP is entitled to its requested fee and expense award.

# BACKGROUND

This case is collateral litigation arising from the June 16, 2016, settlement of a consolidated securities class action brought by shareholders of BioScrip, Inc. The district court appointed Fresno County Employees' Retirement Association as lead plaintiff and Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel") as lead counsel for the action. The class sought to recover for two allegedly material misrepresentations that BioScrip, Inc. made and brought an action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934; Securities and Exchange Commission Rule 10b-5; and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.

After the consolidated class-action complaint largely survived a motion to dismiss and the case entered discovery, the parties agreed to settle all of the aforementioned claims. The settlement called for the class-action defendants to pay $10,900,000 into a common fund in exchange for the class releasing all claims asserted against the defendants in the action. The settlement also provided that "Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid solely from (and out of) the Settlement Fund."

5

Stipulation & Agreement of Settlement at 20, ¶ 19, *Faig v. BioScrip, Inc.*, No. 13-cv-6922(AJN) (S.D.N.Y. Feb. 4, 2016), ECF No. 104-5. Thereafter, Lead Counsel moved for an award of attorneys' fees of 25% of the settlement fund, totaling $2,725,000 plus interest, and an expense award of $133,565.28. Lead Counsel's requested fee award amounted to a 1.39 multiplier of the lodestar fee.

The Isaacson/Weaver Family Trust filed an objection to Lead Counsel's requested award, arguing that Lead Counsel's award should be reduced to the lodestar amount. No other class member objected to the settlement agreement or the requested fee. The district court subsequently held a settlement fairness hearing where it heard argument on, among other things, Lead Counsel's fee request. In a thorough and discerning opinion, the district court found that Lead Counsel's requested fee was reasonable and granted the fee in full.

**DISCUSSION**

The parties primarily dispute the method by which a reasonable fee should be calculated when class counsel settles claims brought pursuant to statutes with fee-shifting provisions by establishing a common settlement fund. The Objector argues that, because the parties created the common fund to resolve

claims based on statutes with fee-shifting provisions, the Supreme Court's fee-shifting jurisprudence applies, and Lead Counsel is presumptively entitled to only the unenhanced lodestar fee. Lead Counsel disagrees, arguing that the settlement that created the common fund resolved claims based on statutes that do *not* have applicable fee-shifting provisions, and regardless, the common-fund doctrine governs a district court's award of attorneys' fees when counsel has secured a settlement fund for the benefit of the class. We make clear today what has long been implicit in this Circuit's jurisprudence: regardless of whether a case is brought pursuant to a statute with a fee-shifting provision, if the parties settle the case by creating a common fund, common-fund principles control class counsel's fee recovery. So concluding, we offer no opinion on whether the statutes pursuant to which the underlying case arose contain applicable fee-shifting provisions.

## I. Standard of Review

"The Second Circuit reviews a district court's decision to grant or deny an award of attorneys' fees for abuse of discretion, reviewing de novo any rulings of law." *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*, 814 F.3d

7

652, 656 (2d Cir. 2016). Because the Objector has challenged the fee award based on the district court's ruling of law that Lead Counsel was entitled to a common-fund fee award, our review is de novo.

## II. The American Rule and Its Exceptions

In the American system of justice, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). There are two well-known exceptions to this "American Rule": (1) where Congress has specifically legislated that the prevailing party may recover fees from the losing party, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 & n.3 (2010), and (2) where "a litigant or a lawyer . . . recovers a common fund for the benefit of persons other than himself or his client," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). While in both instances an attorney is entitled to a recovery that is ultimately financed by the opposing party, the Supreme Court has placed greater restrictions on attorneys' fees recovered from statutory fee-shifting provisions than on fees recovered from common funds.

When a statute's fee-shifting provision authorizes a reasonable attorneys' fee, the Supreme Court has held that "the lodestar method yields a fee that is presumptively sufficient."[2] *Perdue*, 559 U.S. at 552. Fee-shifting provisions typically encourage counsel to represent plaintiffs in actions where "Congress has opted to rely heavily on private enforcement to implement public policy." *Alyeska Pipeline Serv. Co.*, 421 U.S. at 263. Where a litigant acts as a private attorney general, the goal of fee shifting is to provide "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue*, 559 U.S. at 552. The defendant effectively finances the private enforcement action against it as a component of its liability. *See Alyeska Pipeline Serv. Co.*, 421 U.S. at 253-54 (quoting fee-shifting provisions that refer to taxing the opposing party for fees "incident to the judgment" (internal quotation marks omitted)).

Notably, an unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case. *See City of Burlington v. Dague*,

---

[2] The lodestar method calculates a given attorney's fee by multiplying an attorney's reasonable hourly rate by the number of hours that the attorney spent on the case. *Perdue*, 559 U.S. at 546.

505 U.S. 557, 562-63 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air* (*Del. Valley II*), 483 U.S. 711, 724-25 (1987). This makes particular sense where the defendant shoulders the burden of fees because "[a]n attorney operating on a contingency-fee basis pools the risks presented by his various cases." *Dague*, 505 U.S. at 565. Therefore, "enhancing fees for risk of loss forces losing defendants to compensate plaintiff's lawyers for not prevailing against defendants in other cases." *Del. Valley II*, 483 U.S. at 724-25. The defendant, however, has no responsibility to compensate an attorney for risk in the attorney's other cases and would be unfairly penalized if it were forced to subsidize an attorney's other ventures. Thus, where counsel receives a fee award pursuant to a fee-shifting statute authorizing a reasonable fee, we presume that the unenhanced lodestar is a reasonable fee. *Perdue*, 559 U.S. at 552.

In contrast to fees awarded pursuant to fee-shifting provisions, fees awarded pursuant to the common-fund doctrine do not extract a tax on the losing party but instead confer a benefit on the victorious attorney for her representation of her client and the class members. *See Boeing*, 444 U.S. at 478. "The doctrine rests on the perception that persons who obtain the benefit of a

lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* The common-fund doctrine is therefore rooted in the courts' "historic power of equity to permit" a person who secures a fund for the benefit of others to collect a fee directly from the fund. *Alyeska Pipeline Serv. Co.*, 421 U.S. at 257 (citing *Trustees v. Greenough*, 105 U.S. 527, 531-33 (1881)). Under the common-fund doctrine, a district court may select "either the lodestar or percentage of the recovery methods" to calculate fees. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2d Cir. 2000); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010). A common-fund-percentage fee must still be evaluated for reasonableness, *see, e.g.*, *McDaniel*, 595 F.3d at 423, but may exceed the lodestar—i.e., it may be less than, equal to, or greater than the lodestar, *see, e.g.*, *Goldberger*, 209 F.3d at 47.

Accordingly, the means by which an attorney becomes entitled to a fee can affect the method used to calculate what a reasonable fee is. Subject always to the district court's discretion, an attorney seeking a fee after establishing statutory liability will presumptively receive a fee equal to the unenhanced lodestar, and an attorney seeking a fee after establishing a common fund will receive a fee

11

calculated using either the lodestar method or a percentage-of-the-fund method, which can yield a fee that is less than, equal to, or greater than the lodestar fee.

### III. Fee-Shifting Statutes Do Not Circumscribe the Common-Fund Doctrine

Fee-shifting principles and the common-fund doctrine occupy separate realms. In *Alyeska Pipeline Service Co. v. Wilderness Society*, the Court identified a "consistently followed" rule that fee-shifting statutes do "not interfer[e] with the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund . . . itself or directly from the other parties enjoying the benefit." 421 U.S. at 257. The Supreme Court therefore suggested that, even when statutory fees and the common-fund doctrine collide, the common-fund doctrine operates autonomously from fee-shifting principles.

Our Circuit has followed suit. In *County of Suffolk v. Long Island Lighting Co.*, this Court considered whether class counsel could be awarded fees from a common fund despite the fact that counsel would be entitled to statutory fees under the Racketeer Influenced and Corrupt Organizations Act if it prevailed on appeal. 907 F.2d 1295, 1326-27 (2d Cir. 1990). En route to deciding that class

12

counsel was entitled to fees for its significant work in bringing about a settlement, we observed that "fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine." *Id.* at 1327. An exception to this principle exists only if the equitable-fund doctrine interferes with a fee-shifting statute's purpose "to encourage the prosecution of certain favored actions by private parties," in which case the doctrine yields to the statute. *Id.* We determined that, where a common fund results from the commencement of a favored action, no such interference exists, and class counsel is entitled to fees under the common-fund doctrine notwithstanding a statutory fee-shifting provision. *Id.* at 1327-28.

In *Goldberger v. Integrated Resources, Inc.*, we again obliquely addressed the common-fund doctrine vis-à-vis statutory fee-shifting principles. 209 F.3d 43. There, we considered whether a securities class-action settlement—settling claims brought under Rule 10b-5, *id.* at 45, one of the provisions at issue in this case—could support an award of attorneys' fees based on a percentage-of-the-fund approach. *Id.* at 47. We noted that both the lodestar and the percentage-of-the-fund methods can yield a "reasonable attorneys' fee" from a common-fund

13

settlement. *Id.* at 47-50; *see also McDaniel*, 595 F.3d at 419. The Court's analysis foreshadowed our decision today: in rejecting counsel's claim "that the district court erroneously relied on the strictures against risk multipliers in statutory fee-shifting cases" when it awarded a lodestar fee in a common-fund case, we noted that "[c]ourts have held such strictures inapplicable to cases like this, where the lawyers seek fees from a common fund they won for plaintiffs." *Goldberger*, 209 F.3d at 54 n.3.

**IV.    Our Sister Circuits Have Articulated Sound Rationale for Precluding the Application of Fee-Shifting Principles to Common-Fund Awards**

Our sister circuits have persuasively supported *Goldberger*'s unceremonious rejection of the suggestion that statutory fee-shifting principles curtail a district court's discretion in common-fund cases and have offered compelling reasons why a common-fund fee may differ from a statutory fee.

The Ninth Circuit has held that "unless Congress has forbidden the application of the common fund doctrine in cases in which attorneys could potentially recover fees under the type of fee-shifting statutes at issue here, the courts retain their equitable power to award common fund attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The court reasoned that in

14

negotiating a settlement, "a defendant is interested only in disposing of the total claim asserted against it." *Id.* at 964 (internal quotation marks omitted). Therefore, "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* (internal quotation marks omitted); *see also Goldberger*, 209 F.3d at 52-53 (noting this principle in the context of parties' incentives to oppose a fee award).

The settling defendant's focus is on its bottom line, and once that bottom line has been inked, the defendant's interest in how class members and class counsel spend the settlement money dwindles. This is in stark contrast to fees awarded pursuant to a fee-shifting statute, where as part of its liability and in addition to any monetary judgment, the defendant is forced to pay for the costs of the statute's enforcement against it. *Cf. Alyeska Pipeline Serv. Co.*, 421 U.S. at 247-54 (tracing the evolution of taxable costs against a defendant as an incident of the defendant's liability). Therefore, where a statute shifts fees, we consider a reasonable fee with the *defendant's* perspective in mind. *See Del. Valley II*, 483 U.S. at 724-25 (rejecting contingency enhancement of lodestar fee after discussing the ramifications of such an enhancement on defendants).

In contrast, where an attorney has settled a case and created a common fund, we determine what a reasonable fee is from the *plaintiff's* perspective. Critically, a reasonable fee from the plaintiff's perspective can account for contingency risk where such risk exists,[3] and a common-fund fee may therefore exceed what would be a "reasonable fee" in the fee-shifting context. The Seventh Circuit has persuasively articulated why accounting for contingency risk can be appropriate when the *plaintiff* funds the fee but not when the *defendant* funds the fee. Assessing a fee that accounts for contingency risk against a defendant would require the defendant to "subsidiz[e] plaintiffs' attorneys for unsuccessful lawsuits against other defendants." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). But "[i]n a common fund case, . . . because compensation for risk is charged against the *plaintiff class*, defendants would not be forced to subsidize directly plaintiffs' attorneys' losing endeavors." *Id.* (emphasis added).

---

[3] We note that it will not always be the case that an attorney representing a class assumes compensable contingency risk. A case may, for example, have such a high likelihood of being meritorious that compensation for contingency risk is unnecessary. *See, e.g.*, *Goldberger*, 209 F.3d at 52 (noting that there is not "a substantial contingency risk in every common fund case" and cautioning against calculating contingency risk into every percentage-fee award).

The plaintiff class is therefore appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases. That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited by the risk she has assumed that the class's cause will be unsuccessful. The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf. Consistent with the reasoning and holding of the Ninth Circuit in *Staton*, the Seventh Circuit has therefore held that "common fund principles properly control a case [that] is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Id.* at 564; *see also Staton*, 327 F.3d at 968.

## V. The Common-Fund Doctrine Does Not Threaten to Misalign Counsel and Her Client's Incentives

In agreeing with the Seventh and Ninth Circuits, we decline to yield to the Objector's contention that applying common-fund principles to fee recoveries from cases initiated under fee-shifting statutes will misalign attorneys'

incentives. The Objector argues that allowing counsel to extract a percentage fee under the common-fund doctrine encourages counsel to settle cases early—even when her client's best interests are served by prosecuting the claim to trial. We recognize that both the lodestar methodology and the common-fund methodology provide imperfect solutions for aligning an attorney's incentive to settle with her client's. *McDaniel*, 595 F.3d at 419 ("[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems."). We nonetheless do not share in the Objector's concern that the percentage-fee approach will destroy class representation for two primary reasons: first, a fee awarded under the common-fund doctrine provides class counsel with the incentive to maximize the settlement payout for the class because a larger settlement yields a proportionally larger fee; second, a district court is required to review class settlements and class counsel's fees, providing an extra layer of security that class counsel will fairly and adequately represent the class.

As to the first reason, we have previously noted that "the percentage method has the advantage of aligning the interests of plaintiffs and their

attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation." *Id*. Thus, once the parties have agreed to settle, the percentage-of-the-fund methodology serves as important motivation for counsel to maximize the class's recovery, and, a fortiori, counsel's fee.

This incentive structure is critically important because, under the common-fund doctrine, class counsel is not entitled to a common-fund fee or an unenhanced lodestar fee by force of entering into a settlement agreement on the class's behalf. Rather, the district court retains discretion to determine which methodology it will use to calculate class counsel's reasonable fee. *Goldberger*, 209 F.3d at 50 ("[W]e hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."). As such, class counsel cannot enter into a premature settlement confident that it will receive a percentage-of-the-fund fee that exceeds its lodestar fee. Since the district court alone makes the decision of how class counsel's fee will be calculated, class counsel's safest bet for securing a large fee award is to prosecute the action until the point at which settlement is the best available option and thereafter maximize her client's returns.

As to the second reason that a percentage-fee method is workable despite the Objector's concerns, we are comforted by the fact that a "court is to act as a fiduciary who must serve as a guardian of the rights of absent class members" in reviewing a class-action settlement and a class fee award. *Id.* at 52 (internal quotation marks omitted). The Federal Rules of Civil Procedure require that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised *only with the court's approval*." Fed. R. Civ. P. 23(e) (emphasis added). Rule 23 requires the district court to hold a hearing and consider a number of factors to ensure that a proposed settlement "is fair, reasonable, and adequate," *id.* 23(e)(2), and the court must specifically evaluate "the terms of any proposed award of attorney's fees," *id.* 23(e)(2)(C)(iii). Thus, the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement. This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check.

In addition to ex post facto review of fee awards, some district courts have elected to exercise their discretion to select and manage class counsel at the outset of the litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 201 n.6 (3d Cir. 2000) ("[D]istrict courts can avoid many of [the] complications associated with fee awards by setting fee guidelines and ground rules early in the litigation process."). One example of such an ex ante approach to selecting class counsel, popular in securities class actions, is for the district court to request that prospective class attorneys submit proposals regarding their qualifications, predictions for expected recovery, and their prospective fees. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001). Thereafter, "[t]he judge in turn acts as an agent for the class, selecting the firm that seems likely to generate the highest recovery net of attorneys' fees." *Id.*; *see also Gunter*, 223 F.3d at 201 n.6. Placing the district court at the helm of class-counsel selection allows the district court to actively consider class counsel's performance while the litigation remains pending and is another means of monitoring fee awards.

Further, if judicial review of class-action settlements with a "searching assessment" of counsel's fee award, *McDaniel*, 595 F.3d at 419 (internal quotation

marks omitted), were not solace enough for the Objector, we have also counseled that the district court should use the lodestar as a "baseline" against which to cross-check a percentage fee: "we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50. Thereafter, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.* Fee requests that deviate wildly from the unenhanced lodestar fee are unlikely to pass this cross-check, and district courts are at liberty to reduce the requested fee within their discretion.

We thus have confidence in the district court as fiduciary of the class and ultimate decisionmaker on a class-action settlement to substantially alleviate the Objector's concerns about class counsel's incentives. Having obtained such reassurance, we hold that, where a class action results in a common-fund settlement for the benefit of the class, the common-fund doctrine applies and permits a district court to use its discretion to award class counsel either an unenhanced lodestar fee or a fee calculated as a percentage of the settlement fund. This principle applies even when claims are initiated pursuant to a statute

22

with a fee-shifting provision. Since the parties do not argue that the district court abused its discretion in analyzing the propriety of the fee award under the discretionary factors, we affirm the order of the district court.

## CONCLUSION

The class, including the Objector, has benefited from Lead Counsel's negotiation of a common settlement fund. Because Lead Counsel's fee is extracted directly from the beneficiaries of its work, Lead Counsel is entitled to compensation not only for skillfully negotiating that settlement fund but for bearing the risk that the suit would not generate any recovery. Accordingly, even if the class's claims were initiated under fee-shifting statutes, common-fund principles would govern, and the district court had the discretion to award Lead Counsel a fee equaling either the lodestar fee or a percentage of the fund. The district court did not abuse its discretion when it determined that a percentage of the fund reasonably compensated counsel. The district court's order is hereby **AFFIRMED**.